## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **KIMBERLY DAVIS,** | ) |
| Plaintiff, | ) |
| v. | ) No. 06 C 5319 |
| **ELECTRICAL INSURANCE TRUSTEES,** | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Kimberly Davis filed this lawsuit against defendant Electrical Insurance Trustees seeking relief for retaliation under Title VII of the Civil Rights Act, 42 U.S.C. 2000e *et seq*. Defendant has moved for summary judgment and to strike certain portions of plaintiff's statement of material facts and answer to defendant's statement of material fact. For the following reasons, the motions are denied.

I.

Plaintiff, an African-American, began her employment with defendant on October 11, 1999. Defendant is a non-profit multi-employer trust fund established and maintained to provide pension and welfare benefits to individuals employed in the union electrical construction industry in Cook County. Defendant provides services and administers employee benefits to nearly 15,000 eligible participants. Defendant has about 25 employees. Plaintiff initially worked as an accounting clerk and had a

starting annual salary of $26,000. Plaintiff eventually received a salary increase to approximately $30,000 in 2000 and her job title was changed to accounting analyst. Plaintiff's duties included assisting with the management of cash deposits, payroll report balancing, preparing cash deposits and reconciling discrepancies.

In April 2000, defendant converted its accounting system to a new computerized system called Vitech. Later that same year, defendant hired Megan Bandyk as an accounting analyst because of her prior experience with the Vitech system. Bandyk's starting salary was approximately $4,000 higher than plaintiff's salary in 2000.

On February 10, 2005, plaintiff found an unaddressed envelope on her desk and opened it. Inside, she found Bandyk's pay stub, which Bandyk appeared to have misplaced. Plaintiff observed that Bandyk's salary was higher than her own and discussed this information with her co-worker Sharon Norman. Plaintiff also made two copies of Bandyk's pay stub and put the original pay stub back in an envelope and placed it back on her desk in case Bandyk came looking for it. Bandyk did not come looking for the envelope and at the end of the day plaintiff placed the envelope on Bandyk's chair. Plaintiff never told Bandyk she had viewed and copied her pay stub.

On February 14, 2005, plaintiff confronted her supervisor Brian Berg to discuss the difference in pay between Bandyk and Norman and herself. On the same day, Berg met separately with Norman and plaintiff to discuss the situation. Berg also asked them both how they had learned about Bandyk's salary. According to plaintiff, both Norman and plaintiff told him how they came upon Bandyk's pay stub.

On February 22, 2005, plaintiff and Norman filed charges of discrimination with the Illinois Department of Human Rights ("IDHR"), mistakenly naming the electrical employees union as their employer when, in fact, they intended to sue defendant. At some point in the following weeks, Sean Madix, the Fund Administrator, met with plaintiff and Norman individually to discuss the charges. Berg was also present at this meeting.

On August 1, 2005, plaintiff filed an amended charge of discrimination naming defendant as her employer. On February 9, 2006, plaintiff and Norman attended a fact-finding conference at IDHR headed by Charles Dunlap, an IDHR investigator. During the conference, plaintiff testified about how she obtained copies of Bandyk's pay stub. Subsequently, during the settlement discussion portion of the conference and in the presence of the investigator, Madix told plaintiff that in order for her to keep her job she had to agree to drop the charges. Norman settled her case with defendant. Plaintiff rejected Madix's offer. The following day

3

Madix suspended plaintiff from her employment and explained this was because she had improperly obtained and disclosed Bandyk's pay stub information (which included information such as Bandyk's home address, social security number, and bank account information). Defendant contends this violates its "Standards of Conduct in the Employee Handbook" which provides employees are expected to "[s]afeguard and treat all Fund and Participant information confidentially" and identifies as misconduct "[b]reaching the confidentiality of Fund or Participant information." Plaintiff was officially terminated on February 13, 2006. Plaintiff's present lawsuit is only for retaliation, not discrimination.

II.

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Steen v. Myers*, 486 F.3d 1017, 1021 (7th Cir. 2007) (citing Fed. R. Civ. P. 56(c)). If the moving party meets this burden, the non-moving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir. 2006) (citing Fed. R. Civ. P. 56(e);

---

[1] Defendant's motion to strike is denied as I did not rely on inadmissible evidence or statements that were not supported by the record. Accordingly, any alleged violations of Local Rule 56.1 were irrelevant to the resolution of the motion for summary judgment.

4

*Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990)). The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

Defendant moves for summary judgment on the ground that plaintiff cannot establish a causal link between her termination and her testimony or participation in the IDHR proceedings. Plaintiff concedes that she is only proceeding under the direct method of proof. In order to establish a claim for retaliation under Title VII under the direct method of proof, plaintiff must show (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action by her employer, and (3) there was a causal connection between the two. *Lewis v. City of Chicago*, 496 F.3d 645, 655 (7th Cir. 2007) (quoting *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)).

In this case, defendant contends that it terminated plaintiff upon learning about how plaintiff obtained Bandyk's pay stub. Madix testified that he learned this as a result of the IDHR's fact-finding hearing where plaintiff testified. However, Madix also admits that prior to the fact-finding hearing, he had obtained

5

a copy of plaintiff's charge and that Bandyk's pay stub was attached. Plaintiff testified at her deposition that Berg asked both her and Norman how she had obtained information concerning Bandyk's salary. Plaintiff says she told him the same thing as her testimony before the IDHR. Berg was also present at the meeting between plaintiff and Madix after plaintiff filed her underlying discrimination charge.

Defendant concedes that the timing of plaintiff's termination is suspect, but argues that it was only then that Madix became aware of how plaintiff obtained the pay stub. "'[T]he mere fact that one event preceded another does nothing to prove that the first event cause the second; the plaintiff must also put forth other evidence that reasonably suggests that her protected speech activities were related to her employer's discrimination.'" *Id.* (quoting *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 758-59 (7th Cir. 2006); *Scaife v. Cook County*, 446 F.3d 735, 742 (7th Cir. 2006)). Here, plaintiff has put forth evidence, in the form of her deposition testimony, that Berg - her supervisor - was previously informed that plaintiff had a copy of Bandyk's pay stub and how she had obtained it. There is also evidence that Berg worked in close proximity with Madix, both in light of the small size of the office and his presence in meetings with Madix. Madix also testified he had a copy of the charge, which contained a copy of Bandyk's pay stub, prior to the fact-finding conference. According to plaintiff

6

and Norman, Madix discussed the charges with each of them prior to the fact-finding conference.  Plaintiff also testified that Madix discussed her charge with her in the presence of Berg.  Therefore, plaintiff has set forth additional circumstantial evidence beyond suspicious timing that, taken in the best light to plaintiff, undermines defendant's stated reason for terminating plaintiff.  Accordingly, there is a triable issue of fact and defendant's motion for summary judgment is denied.

III.

For the foregoing reasons, defendant's motions to strike and for summary judgment are denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: October 11, 2007